IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS C. SHRADER,<br><br>                Petitioner,<br><br>v.<br><br>AUDREY GILL,<br><br>                Respondent. | Case No. 1:14-cv-01269 MJS (HC)<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT COURT JUDGE TO THE PRESENT MATTER**<br><br>**(Doc. 1)** |

    Petitioner is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

    Petitioner filed the instant habeas petition in this Court on August 13, 2014 and an amended petition on August 22, 2014. He is currently incarcerated at Federal Correctional Institution Mendota. Petitioner was convicted in the Southern District of West Virginia of two counts of stalking via a facility of interstate commerce in violation of 18 U.S.C. § 2261A(2) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). United States v. Shrader, 675 F.3d 300, 305 (4th Cir. 2012). Petitioner was convicted of all three counts and on August 20, 2010, Petitioner was sentenced to 235 months in prison followed by five years of supervised release. Id.

at 306; see Pet., ECF No. 1 at 2. Petitioner argues that his incarceration is in violation of his Thirteenth Amendment right to be free of involuntary servitude. (See generally Am. Pet.)

## I. SCREENING THE PETITION

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), AEDPA applies to the petition. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

The Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) are appropriately applied to proceedings undertaken pursuant to 28 U.S.C. § 2241. Habeas Rule 1(b). Habeas Rule 4 requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error. Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977)). Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. Hendricks v. Vasquez, 908 F.2d at 491.

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

## II. JURISDICTION

A federal prisoner who wishes to challenge the validity or constitutionality of his

conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). In such cases, only the sentencing court has jurisdiction. Id. at 1163. A prisoner may not collaterally attack a federal conviction or sentence by way of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000) ("Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court."); Tripati, 843 F.2d at 1162.

In contrast, a federal prisoner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez, 204 F.3d at 865. Here, Petitioner is challenging the validity and constitutionality of his conviction. Therefore, the appropriate procedure would be to file a motion pursuant to § 2255 and not a habeas petition pursuant to § 2241.

The Ninth Circuit has recognized a narrow exception allowing a federal prisoner authorized to seek relief under § 2255 to seek relief under § 2241 if the remedy by motion under § 2255 is "inadequate or ineffective to test the validity of his detention." Alaimalo v. United States, 636 F.3d 1092, 1096 (9th Cir. 2011), citing Harrison v. Ollison, 519 F.3d 952, 956 (9th Cir. 2008). "This is called the 'savings clause' or 'escape hatch' of § 2255." Id. Furthermore, § 2255 petitions are rarely found to be inadequate or ineffective. Aronson v. May, 85 S.Ct. 3, 5 (1964) (a court's denial of a prior § 2255 motion is insufficient to render § 2255 inadequate.); Tripati, 843 F.2d at 1162-63 (9th Cir. 1988) (a petitioner's fears of bias or unequal treatment do not render a § 2255 petition inadequate). The burden is on the petitioner to show that the remedy is inadequate or ineffective. Redfield v. United States, 315 F.2d 76, 83 (9th Cir. 1963).

The Ninth Circuit has also "held that a § 2241 petition is available under the 'escape hatch' of § 2255 when a petitioner (1) makes a claim of actual innocence, and (2) has not had an 'unobstructed procedural shot' at presenting that claim. Stephens v.

Herrera, 464 F.3d 895, 898 (9th Cir. 2006).

Petitioner fails to meet either of these requirements. He is here challenging the validity and constitutionality of his federal sentence imposed by a federal court, rather than an error in the administration of his sentence. Therefore, the appropriate procedure would be to file a motion pursuant to § 2255 in the sentencing court, not a habeas petition pursuant to § 2241 in this Court.

Petitioner did not lack an unobstructed opportunity to present his claims in his § 2255 motion. Here, Petitioner has sought review of his federal petition many times. After his 2010 conviction, Petitioner appealed the decision to the Fourth Circuit, which denied his claims on appeal on April 4, 2012. The Court, in denying the appeal, explained the factual underpinnings of the offenses:

> Over the course of more than three decades, Thomas Creighton Shrader harassed and intimidated D.S. and later her husband R.S., causing them to fear for their safety and that of their children. He stands convicted after trial of two counts of stalking through the use of a facility of interstate commerce and one count of being a felon in possession of a firearm. Shrader raises multiple issues in this appeal, including the vagueness of the stalking statute and the length of his sentence. Accepting his contentions, however, would undermine Congress' efforts to protect people like D.S. and R.S. from precisely the sort of terrifying conduct that took place in this case. We therefore affirm.
>
> I.
>
>     A.
>
> Starting sometime around 1973, while still a high school student in McDowell County, West Virginia, D.S. began a relationship with Shrader. Over time he became increasingly demanding and possessive, repeatedly appearing uninvited at D.S.'s house. This led her to break off the relationship in 1975 after approximately two years. When she did so, the defendant threatened to kill D.S.'s two nephews if she did not continue seeing him. Around the same time, the defendant physically assaulted D.S. at her workplace, choking her in an elevator.
>
> On July 16, 1975, the defendant confronted D.S. while she was at home with her mother, Geneva Miller, and a family friend, Rusty Adams. D.S. refused to leave with the defendant. Twenty minutes later, he returned to her home with a high-powered rifle. Entering the house, he shot and killed Rusty Adams in a side room. He next shot Geneva Miller, who died ten days later of gangrene contracted in her wound. D.S. ran out of the house, fleeing across the street to the home of her neighbor, John Kowaleski. Shrader continued shooting and wounded Kowaleski in the arm. The defendant was subdued and arrested, and was charged in West

Virginia state court with two counts of first degree murder in violation of W. Va. Code § 61-2-1 and one count of unlawful wounding in violation of W. Va. Code § 61-2-9.

Shrader pled guilty to these charges on January 20, 1976, and was sentenced to concurrent life sentences with a recommendation of mercy on the murder charges as well as an additional year of incarceration for the wounding offense. Approximately a year later, Shrader escaped from prison. D.S. and her younger sister were taken into protective custody by the state police. Shrader was recaptured and sentenced to an additional year of imprisonment for the escape.

During his incarceration, Shrader continued to contact D.S. He sent approximately fifteen to twenty letters to her at the bank where she worked, repeatedly referencing his murder of D.S.'s friend and mother, and causing D.S. to feel severely threatened. In 1978, the defendant filed a lawsuit against D.S. in Mercer County, West Virginia, alleging that D.S. had breached a promise to marry him and seeking $700,000 in damages from her.

By this time, D.S. had married R.S. In 1979, they moved to Texas, severing all ties with West Virginia, and took a variety of additional precautions to ensure their safety and anonymity. This did not deter Shrader, who wrote letters to D.S.'s father, mother-in-law, and sister, asking whether D.S.'s family was involved in witchcraft, whether D.S. had ever had an abortion, and requesting recent pictures of D.S. He alleged in these letters that he pled guilty to the murders in 1975 to cover up a conspiracy between himself and D.S., and threatened that he would "convict [D.S.] of Rusties death." In 1993, Shrader was released from prison on parole, and was released from parole in 1999.

Beginning on August 6, 2008, Shrader made a series of phone calls to the unlisted number of D.S.'s Texas home. Speaking with D.S., he identified himself and said, "I need to talk to your kids before we die." She denied having children, but Shrader identified them by name. D.S. called 911, but the local police were unable to help her, even though D.S. made clear that she was living in terror. The defendant called back at least four times that evening. He spoke with R.S. as well as D.S., proclaiming to him that D.S. "is my God and I would have done anything for my God," and telling R.S. that he had obtained their contact information in Texas through a Freedom of Information Act request for letters mailed by the parole board notifying D.S. of Shrader's parole hearings.

As a result of these calls, D.S. became afraid for her children to leave their home. R.S. began sleeping with a loaded shotgun under the bed, prepared to defend his family. Shrader persisted, obtaining a photograph of D.S.'s daughter from the website MySpace, and attempting to call her as well. Shrader also showed his friend Carol Miller aerial photographs of D.S.'s home in Texas, commenting about where he could covertly observe the home from across the street. He also formulated a plan to send underwear to D.S.'s daughter with the intent to anger D.S.

On October 30, 2009, R.S. received a UPS package addressed to his wife at their Texas home. Inside was a thirty-two page letter from Shrader. In the letter, Shrader warned D.S. that she had to read it "for [her] own good . . . or don't read and face the consequences blindly." He

5

reiterated his delusion that the murders of Rusty Adams and Geneva Miller were part of a plot hatched by D.S.: "Your plan didn't work and it cost the life of your mother." He claimed that D.S. had aborted their child, wishing for "God to take one of your children's live's in an accident to show me that you did have an abortion." Shrader described how he almost killed D.S. in graphic detail:

> You have failed to realize that the only reason (after everything fell apart at your house that day), I did not shoot you in the back that day as you ran down the middle of the road for Kowalski's house. Was because I was so deeply in love with you and believed you felt the same for me. Even though while standing on the front porch of the house I had the rifle raised and the cross hair's of the scope were dead center between your shoulder blades. Bye-bye heart, bye-bye lungs, sternum and some ribs.

And he warned D.S. about possible physical violence against her: "Be smart also! Realize I have never laid a finger on you or hurt you physically. In fact I could have, like I told you earlier in this latter, while you were running down the road. Or on the morning that I escaped from the McDowell County Jail." Finally, he closed the letter with thinly-veiled threats about the future, claiming that "It's time to face the piper." He concluded that "From the date you receive this, I am allowing two (2) weeks or 14 days to pass before I initiate my next step."

Understandably terrified, D.S. and R.S. contacted the FBI, which secured a criminal complaint against Shrader and a warrant for his arrest. On November 13, 2009, FBI agents went to the home that Shrader shared with his aunt, Elizabeth Jones, to execute the arrest warrant. Shrader was alone at the house when the agents arrived. He informed Special Agent Terry Schwartz that there were firearms in the home, but refused to consent to a search of the premises to recover them. While several agents took the defendant into custody, Agent Schwartz and other officers awaited Jones's return. Two hours later, she arrived, and consented to the search. In the dining room of the home, officers found a cabinet containing two shotguns and a rifle.

B.

Shrader was ultimately charged with two counts of stalking via a facility of interstate commerce in violation of 18 U.S.C. § 2261A(2)—one alleged that he targeted D.S. and the other that he targeted R.S.—and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The counts were severed and two separate trials were held, first on the firearms charge and subsequently on the two stalking counts.

Prior to the firearms trial, Shrader moved to suppress the firearms found in the house, arguing that the agents violated the Supreme Court's decision in Georgia v. Randolph, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006), by soliciting consent from his aunt after he had been arrested even though he already refused permission for the search. The district court denied the motion, finding that Randolph required the defendant to be present at the time his aunt consented in order to object to the search, and that there was "no evidence to suggest that [the

6

agents'] intent was to extraordinarily render Defendant away from the scene to violate his Fourth Amendment rights."

At the close of the firearms trial, Shrader requested that the court instruct the jury that "[t]he mere proximity of the firearms to Mr. Shrader goes only to the firearms' accessibility and not to the dominion or control which must be proven in order to establish possession of the firearms." The district court instead instructed the jury that "[e]vidence of the mere proximity of the firearms to Mr. Shrader may establish only the firearms' accessibility. However, the proximity of the firearms to Mr. Shrader may also help to establish dominion and control depending on the inferences you draw from the evidence presented in the case." Shrader's counsel again objected, but was overruled, and Shrader was convicted on July 14, 2010.

Shrader filed a wide variety of motions prior to his stalking trial. First, he moved to dismiss the indictment on the grounds that 18 U.S.C. § 2261A(2) was unconstitutionally vague. The district court disagreed, finding that the plain terms of the statute, which incorporate a specific intent requirement, were enough to provide "a person of ordinary intelligence fair notice of what is prohibited." Second, Shrader filed a motion to elect, seeking to compel the government to proceed on only one of the stalking counts and arguing that the indictment was multiplicitous because the stalking statute's unit of prosecution is the "course of conduct" that the defendant engaged in. Again the district court disagreed, finding that the unambiguous terms of the statute "define[ ] the unit of prosecution as the 'person,'" and that the same course of conduct could be prosecuted twice if the government could show "two different mens rea on the part of a defendant" to target two different victims.

On August 20, 2010, the defendant was convicted of both counts in the stalking trial. Prior to his sentencing, Shrader objected to the Pre-Sentence Report's recommendation that he be sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), due to his prior convictions for murder, wounding, and escape. The government conceded that the escape did not qualify as a felony under the ACCA, because it was not subject to a penalty of greater than one year. As to his other crimes, Shrader conceded that they met the statutory definition of violent felonies, but disputed that they had been committed on different occasions, as the ACCA requires. In response, the government offered evidence that had been admitted at the stalking trial, including the testimony of D.S. and the defendant's letter. Shrader disputed the use of this evidence, arguing that it was not approved under the Supreme Court's decision in Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005). The district court disagreed, finding that because "the issue is not whether the crimes of conviction are violent crimes . . . but whether or not they occurred on occasions separate from one another," Shepard was inapplicable. Finding that the evidence showed that the two murders and the wounding were indeed separate occasions, the district court sentenced Shrader as an armed career criminal to 235 months in prison followed by five years of supervised release. This appeal followed. We address each of the six issues that Shrader raises in turn.

United States v. Shrader, 675 F.3d 300, 302-306 (4th Cir. 2012).

After the appeal, Petitioner filed a motion for a new trial with regard to the felon in

7

possession of a firearm conviction, arguing that he did not stipulate to the fact that he had previously committed a felony and did not have the right to possess firearms. The motion was denied on June 4, 2013 by the district court. United States v. Shrader, 2013 U.S. Dist. LEXIS 79128 (S.D. W. Va. June 3, 2013). The court found that Petitioner's arguments, including the argument that he was deaf and not aware of the stipulation, were not credible. (Id.) Petitioner also filed a motion for a new trial with regard to the stalking charges. United States v. Shrader, 2013 U.S. Dist. LEXIS 79420 (S.D. W. Va. June 5, 2013). The Court denied the motion, which argued that the letter sent to D.S. and R.S. should be suppressed because R.S. was acting as a government agent at the time that he opened the letter based his employment with the United States Air Force. (Id.) Petitioner next filed a motion to arrest judgment of his convictions, which was likewise denied on October 7, 2013. United States v. Shrader, 2013 U.S. Dist. LEXIS 145171 (S.D. W. Va. Oct. 7, 2013).

On March 5, 2013, Petitioner filed a petition under 28 U.S.C. § 2241 for writ of habeas corpus. Shrader v. Ives, 2013 U.S. Dist. LEXIS 122697, 2-3 (S.D. W. Va. Aug. 5, 2013). Petitioner challenged the validity his conviction alleging that (1) his conviction for stalking was in violation of congressional intent; (2) the evidence used to convict him was the product of an unlawful search and seizure under Ninth Circuit precedent; and (3) the restoration of Petitioner's civil rights by the State of West Virginia "makes Petitioner innocent of any firearm violations." (Id.) On April 24, 2013, the District Court for the Central District of California transferred the matter to the Southern District of West Virginia after determining that Petitioner was challenging the validity of his conviction and sentence imposed by that court. (Id.)

Upon transfer to the Southern District of West Virginia, the court granted Petitioner's request to withdraw the petition. Shrader v. Ives, 2013 U.S. Dist. LEXIS 122697 (S.D. W. Va. Aug. 5, 2013); Shrader v. Ives, 2013 U.S. Dist. LEXIS 121729 (S.D. W. Va. Aug. 27, 2013).

Petitioner has not yet sought relief by way of a petition under § 2255. However,

Petitioner has presented insufficient arguments as to why § 2255 constitutes an "inadequate or ineffective" remedy for raising his claims. Petitioner only states that § 2255 is not "broad enough" to include his claims. (Pet. at 4.) Petitioner has not presented any arguments that he qualifies for the escape hatch of § 2255 based on either a claim of actual innocence or that he lacked an unobstructed procedural shot at presenting his claims. Stephens v. Herrera, 464 F.3d 895, 898 (9th Cir. 2006). Accordingly, the Court finds that § 2241 is not the proper avenue for raising Petitioner's claims, and the petition should be dismissed for lack of jurisdiction.

### III. CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petition, the court may only issue a certificate of appealability "if

jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, reasonable jurists would not find to be debatable or wrong the Court's determination that Petitioner is not entitled to federal habeas corpus relief nor would they find petitioner deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby declines to issue a certificate of appealability.

## IV. RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that the petition for writ of habeas corpus be DISMISSED. The Court further ORDERS the Clerk of Court to assign a District Court Judge to the present matter.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    August 26, 2014       /s/ *Michael J. Seng*
                                                                  UNITED STATES MAGISTRATE JUDGE